**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

**RILEY STASKIEWICZ**,
an individual,                                                                    Hon.
Plaintiff,                                                                         Case No.

v.

**KRAFT HEINZ FOOD COMPANY, LLC**
A Domestic Limited Liability Company
Defendants

| | |
|---|---|
| **AVANTI LAW GROUP, PLLC**<br>Robert Anthony Alvarez (P66954)<br>Victor M. Jimenez Jr (P85194)<br>Attorneys for Plaintiff<br>600 28th St. SW<br>Wyoming, MI 49509<br>(616) 257-6807<br>ralvarez@avantilaw.com<br>vjimenez@avantilaw.com | |

**COMPLAINT AND JURY DEMAND**

Plaintiff Riley Staskiewicz, by and through counsel, files this Complaint against

Defendant Kraft Heinz Foods Company LLC and states as follows:

**I. INTRODUCTION**

1. This is an employment disability-discrimination, failure-to-accommodate, and retaliation

   action arising from Defendant's treatment and termination of Plaintiff at Defendant's

   Holland, Michigan facility.

2. Plaintiff is deaf or hard of hearing and relies on visual communication, including lip

   reading, to understand and participate effectively in workplace communications and

   investigatory meetings.

1

3. Defendant knew of Plaintiff's hearing impairment before terminating him.

4. On April 28, 2025, while Plaintiff was suspended pending investigation and before Defendant communicated any final termination decision to him, Plaintiff requested a reasonable accommodation related to the ongoing investigatory and disciplinary process.

5. Plaintiff requested an in-person or on-site meeting with union representation and effective communication access so he could understand the allegations, confer privately with his representative, read visual cues, and respond meaningfully before Defendant made a final employment decision.

6. Plaintiff did not request exemption from investigation or discipline.

7. Plaintiff requested access to a process he could understand and participate in despite his hearing impairment.

8. Defendant did not grant the requested accommodation, did not offer an effective alternative accommodation, and did not engage in a good-faith interactive process.

9. Instead, Defendant terminated Plaintiff's employment the next day, April 29, 2025.

10. Defendant then relied, in part, on alleged failure to cooperate in the investigation, even though Defendant had denied Plaintiff the disability-related accommodation necessary for meaningful participation in that investigation.

11. Defendant's stated reasons for termination were pretextual, selectively enforced, and temporally connected to Plaintiff's protected activity and accommodation request.

## II. JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction over Plaintiff's federal claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

2

13. This Court has supplemental jurisdiction over Plaintiff's Michigan-law claims under 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts as Plaintiff's federal claims.

14. Venue is proper in this District because the events giving rise to Plaintiff's claims occurred at Defendant's Holland, Michigan facility, which is located within the Western District of Michigan.

15. Defendant conducts business in this District and employed Plaintiff in this District.

### III. PARTIES

16. Plaintiff Riley Staskiewicz is an individual residing in Walker, Michigan.

17. Defendant Kraft Heinz Food Company LLC is an employer that conducts business in Michigan, including at its Holland, Michigan facility.

18. At all relevant times, Defendant employed Plaintiff within the meaning of the ADA and applicable Michigan law.

19. At all relevant times, Defendant had sufficient employees to be covered by the ADA and Michigan's Persons with Disabilities Civil Rights Act.

### IV. ADMINISTRATIVE EXHAUSTION

20. Plaintiff filed administrative charge materials with the Michigan Department of Civil Rights and/or the Equal Employment Opportunity Commission arising from the events described in this Complaint.

21. The EEOC issued Plaintiff a Notice of Right to Sue on or about April 14, 2026, identifying Charge No. 23A-2025-01052 and Respondent "Heinz Food Co.". *Exhibit A*.

22. Plaintiff files this action within 90 days of receipt of the EEOC Notice of Right to Sue.

3

23. All administrative prerequisites to Plaintiff's ADA claims have been satisfied or are otherwise excused.

## V. FACTUAL ALLEGATIONS

### A. Plaintiff's Employment and Apprenticeship

24. Plaintiff began working for Defendant at its Holland, Michigan facility on or about October 4, 2021.

25. Plaintiff was enrolled in an apprenticeship program beginning on or about October 8, 2021.

26. Plaintiff worked in or around Defendant's maintenance/millwright operations.

27. Plaintiff remained employed by Defendant until April 29, 2025.

28. Plaintiff was qualified for his position and performed the essential functions of his job, with or without reasonable accommodation.

29. Plaintiff completed substantial apprenticeship requirements and, as of April 2025, had approximately 500 hours remaining in his apprenticeship.

30. Plaintiff's continued employment and apprenticeship progression were important to his wages, benefits, seniority, career path, and long-term earning capacity.

### B. Plaintiff's Hearing Impairment and Defendant's Knowledge

31. Plaintiff is hearing impaired or hard of hearing.

32. Plaintiff relies on visual communication, lip reading, face-to-face communication, and visual cues to understand workplace discussions, investigatory meetings, and important employment communications.

33. Plaintiff's hearing impairment substantially affects his ability to participate effectively in important workplace communications when he is denied visual access, in-person communication, or other effective communication measures.

34. Plaintiff submitted an audiometry or audiology report to "Johanna" from Defendant's Human Resources department on or about April 17, 2023.

35. Defendant therefore had documentation concerning Plaintiff's hearing impairment before the events leading to his termination.

36. Plaintiff also informed Defendant's personnel during the April 2025 investigation that he had hearing-related limitations.

37. Defendant's representatives, including Human Resources personnel, were aware or should have been aware that Plaintiff required effective communication accommodations.

## C. Prior Reports, Scrutiny, and Retaliatory Treatment Background

38. Beginning in or around 2023, Plaintiff repeatedly reported concerns regarding coworker Dan Hagen.

39. Plaintiff reported hostile, threatening, or inappropriate workplace conduct involving Hagen.

40. Plaintiff reported those concerns to supervisors and/or Human Resources.

41. After making reports concerning Hagen, Plaintiff experienced increased scrutiny and disproportionate work assignments.

42. Plaintiff contends Defendant assigned him excessive work while Hagen was not subjected to comparable workload pressure.

43. Plaintiff further contends this treatment contributed to fatigue, anxiety, and emotional distress.

44. These allegations are pled as background facts showing a pattern of heightened scrutiny and retaliatory treatment, not as a standalone NLRA, CBA, or workplace-safety count.

**D. February 2025 Discipline**

45. In February 2025, Defendant investigated Plaintiff following workplace comments involving politics and alleged use of derogatory language.

46. Plaintiff denies using the "N-word" or harassing coworkers.

47. Plaintiff contends witnesses Rex and Jorge Martinez provided or were willing to provide information supporting Plaintiff's denial.

48. Plaintiff contends Defendant disciplined him despite witness information contradicting the allegation that Plaintiff used derogatory racial language.

49. On or about February 21, 2025, Defendant issued discipline to Plaintiff under the anti-harassment provisions of the Collective Bargaining Agreement.

50. Defendant warned Plaintiff that further misconduct could result in termination.

51. Plaintiff contends the February 2025 discipline was unsupported, selectively enforced, and/or based on an incomplete or biased investigation.

52. Defendant later relied on the February 2025 discipline as part of the stated basis for Plaintiff's termination.

**E. April 2025 Social-Media Investigation**

53. On or about April 21, 2025, Plaintiff made a comment on the social-media platform X/Twitter.

54. Defendant investigated Plaintiff's social-media comment on or about April 22, 2025.

55. The investigation was conducted by Defendant's Human Resources representative Andres Villacis, who was based outside Michigan, with local representatives participating.

56. Defendant accused Plaintiff of making a social-media post containing harassing, discriminatory, and violent language.

57. Defendant also accused Plaintiff of providing false information and failing to cooperate during the investigation.

58. Plaintiff contends Defendant took the social-media comment out of context.

59. During the April 2025 investigation, Defendant demanded or attempted to obtain access to Plaintiff's personal cellular phone and/or personal social-media information.

60. Plaintiff declined to provide Defendant access to his personal cellular phone and personal information.

61. Defendant later cited alleged failure to cooperate in the investigation as one of the stated grounds for Plaintiff's termination.

62. Plaintiff contends the April 2025 investigation was rushed, biased, and procedurally defective.

63. Plaintiff further contends Defendant did not provide him an accessible opportunity to respond meaningfully before terminating his employment.

**F. Plaintiff's April 28, 2025 Accommodation Request**

64. During the April 2025 investigatory process, Plaintiff advised Defendant of his hearing impairment.

65. Defendant knew Plaintiff had difficulty fully understanding and participating in remote, non-visual, or inaccessible communications.

7

66. Plaintiff requested an accommodation so he could participate meaningfully in the investigation.

67. Plaintiff requested an in-person or on-site meeting with union representation and effective communication access.

68. Plaintiff requested that accommodation because of his hearing impairment and need for visual communication, lip reading, visual cues, and the ability to confer privately with his representative.

69. Plaintiff made this request in writing on or about April 28, 2025.

70. Plaintiff's requested accommodation was reasonable, low-cost, and directly connected to his known hearing impairment.

71. Plaintiff did not ask Defendant to stop the investigation.

72. Plaintiff did not ask Defendant to excuse misconduct.

73. Plaintiff asked Defendant to provide an accessible process before making a final employment decision.

74. The requested accommodation would have allowed Plaintiff to understand the allegations, communicate privately with his representative, clarify disputed issues, and respond meaningfully.

75. The requested accommodation would not have imposed an undue hardship on Defendant.

76. Defendant did not grant the requested accommodation.

77. Defendant did not offer an effective alternative accommodation.

78. Defendant did not ask Plaintiff for clarification regarding his accommodation request.

79. Defendant did not engage in a good-faith interactive process.

80. Defendant did not provide Plaintiff a written explanation denying the accommodation before terminating his employment.

**G. Defendant's Failure to Pause or Provide an Accessible Process**

81. Before April 28, 2025, Defendant had not communicated a final termination decision to Plaintiff.

82. After Plaintiff requested an accommodation that would allow him to meaningfully participate in the investigation, Defendant did not pause the process.

83. Defendant did not meet with Plaintiff in person or on site.

84. Defendant did not provide an effective alternative communication accommodation.

85. Defendant did not obtain Plaintiff's accommodated response before issuing the termination.

86. Defendant did not give Plaintiff a meaningful opportunity to clarify, explain, or respond to the allegations in an accessible setting.

87. Instead, Defendant issued Plaintiff's termination the next day.

88. Defendant's stated reliance on alleged noncooperation was intertwined with Defendant's refusal to provide an accessible investigative process.

89. Plaintiff's ability to respond, clarify, and participate was materially impaired by Defendant's failure to accommodate his hearing impairment.

90. Defendant cannot fairly rely on Plaintiff's alleged failure to cooperate in an investigation while denying Plaintiff the disability-related accommodation necessary for meaningful cooperation.

**H. Protected Activity**

91. Plaintiff engaged in protected activity by requesting reasonable accommodation under the ADA.

92. Plaintiff engaged in protected activity by opposing disability-related unfair treatment.

93. Plaintiff engaged in protected activity by filing or preparing to file administrative charges with MDCR and/or EEOC.

94. Plaintiff also complained about workplace safety, hostile conduct, and retaliation.

95. Defendant knew of Plaintiff's protected activity before terminating him.

96. Andres Villacis and/or Defendant's Human Resources representatives knew or should have known of Plaintiff's accommodation request before the termination was issued.

97. The same Human Resources process that handled the April 2025 investigation also issued the termination decision.

## I. Termination

98. On April 29, 2025, Defendant terminated Plaintiff's employment.

99. Defendant did not hold the requested in-person or on-site meeting before terminating Plaintiff.

100.  Defendant did not provide Plaintiff an effective opportunity to participate in the process with reasonable accommodation.

101.  Defendant stated that Plaintiff was terminated for violating the CBA's Anti-Harassment, Threatening Harm to Person or Property, and Cooperation with Investigations rules.

102.  Defendant relied in part on the February 2025 discipline to justify termination.

103.  Defendant also relied on the April 2025 social-media investigation to justify termination.

10

104. Defendant's stated reasons for termination were not the true reasons for the decision.

105. Defendant's stated reasons were pretext for failure to accommodate, disability discrimination, and retaliation.

106. Defendant terminated Plaintiff one day after his written ADA accommodation request and  administrative protected activity.

107. Defendant's termination of Plaintiff was materially adverse.

108. Defendant had discretion after April 28, 2025 to pause the process, meet with Plaintiff, provide an accommodation, obtain an accommodated response, impose lesser discipline, or continue the investigation.

109. Defendant chose instead to terminate Plaintiff without providing the requested accommodation or engaging in the interactive process.

**J. Damages**

110. As a result of Defendant's conduct, Plaintiff lost wages, benefits, seniority, apprenticeship progression, and career opportunities.

111. Plaintiff suffered emotional distress, humiliation, anxiety, embarrassment, and loss of enjoyment of life.

112. Plaintiff was forced to seek replacement employment.

113. Plaintiff incurred financial hardship after termination.

114. Plaintiff seeks all damages and relief available under federal and Michigan law.

## COUNT I
## ADA FAILURE TO ACCOMMODATE

115. Plaintiff incorporates all preceding paragraphs.

116. Plaintiff has a disability within the meaning of the ADA.

11

117.    Plaintiff was qualified to perform the essential functions of his position, with or without reasonable accommodation.

118.    Defendant knew of Plaintiff's disability.

119.    Plaintiff requested reasonable accommodation.

120.    Plaintiff's requested accommodation was an in-person or on-site meeting with union representation and effective communication measures related to his hearing impairment.

121.    Plaintiff's requested accommodation was directly connected to his need to understand, participate in, and respond meaningfully during a critical employment investigation.

122.    Plaintiff's requested accommodation would not have imposed an undue hardship on Defendant.

123.    Defendant failed to provide the requested accommodation.

124.    Defendant failed to offer an effective alternative accommodation.

125.    Defendant failed to engage in a good-faith interactive process.

126.    Defendant terminated Plaintiff without first addressing or accommodating Plaintiff's disability-related communication needs.

127.    Defendant violated the ADA.

**COUNT II**
**ADA RETALIATION**

128.    Plaintiff incorporates all preceding paragraphs.

129.    Plaintiff engaged in protected activity under the ADA by requesting reasonable accommodation.

130.    Plaintiff also engaged in protected activity by opposing disability-related unfair treatment and by filing or preparing to file administrative charges.

131. Defendant knew Plaintiff engaged in protected activity.

132. Defendant took materially adverse action against Plaintiff by terminating his employment.

133. Defendant terminated Plaintiff on April 29, 2025, one day after Plaintiff's April 28, 2025 accommodation request and protected activity.

134. Before terminating Plaintiff, Defendant still had discretion to pause the process, meet with Plaintiff, provide an accommodation, obtain an accommodated response, continue the investigation, or impose lesser discipline.

135. Defendant did not do so.

136. Instead, Defendant terminated Plaintiff without granting the requested accommodation and without providing an effective alternative.

137. Defendant relied on contested disciplinary grounds, including alleged violation of the CBA's Anti-Harassment, Threatening Harm to Person or Property, and Cooperation with Investigations rules.

138. Defendant's failure to address the accommodation request, the close temporal proximity between the request and termination, and Defendant's reliance on contested disciplinary grounds support a plausible causal connection between Plaintiff's protected activity and termination.

139. Defendant's stated reasons for termination were pretextual.

140. Defendant retaliated against Plaintiff in violation of the ADA.

## COUNT III
## ADA INTERFERENCE

141. Plaintiff incorporates all preceding paragraphs.

142.    Plaintiff exercised or attempted to exercise rights protected by the ADA by requesting a reasonable accommodation and seeking meaningful access to the investigatory and disciplinary process.

143.    Plaintiff requested an in-person or on-site meeting with union representation and effective communication access so that he could understand the allegations, confer privately with his representative, read visual cues, and respond meaningfully before Defendant made a final employment decision.

144.    Defendant interfered with, restrained, denied, or obstructed Plaintiff's exercise or enjoyment of ADA-protected rights.

145.    Defendant denied the requested accommodation, failed to offer an effective alternative accommodation, and failed to engage in a good-faith interactive process.

146.    Defendant denied Plaintiff meaningful access to the investigation by failing to provide an accessible opportunity to understand, clarify, explain, and respond to the allegations in a setting that accommodated his hearing impairment.

147.    Defendant terminated Plaintiff before obtaining an accommodated response.

148.    Defendant relied, at least in part, on alleged noncooperation while denying Plaintiff the disability-related communication access necessary for meaningful participation in the investigatory and disciplinary process.

149.    Defendant interfered with Plaintiff's exercise or enjoyment of rights protected by the ADA.

**COUNT IV**
**VIOLATION OF MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT**
**DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE**

150.    Plaintiff incorporates all preceding paragraphs.

14

151.    Plaintiff is a person with a disability within the meaning of Michigan law.

152.    Plaintiff was qualified for his position.

153.    Defendant knew or should have known of Plaintiff's disability.

154.    Plaintiff requested a reasonable accommodation related to his hearing impairment.

155.    Plaintiff's requested accommodation was reasonable and directly related to his need for effective communication access during the investigatory and disciplinary process.

156.    Defendant failed to reasonably accommodate Plaintiff's disability.

157.    Defendant failed to provide an effective alternative accommodation.

158.    Defendant denied Plaintiff equal employment opportunities because of his disability and disability-related communication needs.

159.    Defendant used an inaccessible disciplinary process to terminate Plaintiff after denying the accommodation necessary for Plaintiff to participate meaningfully in that process.

160.    Defendant's conduct violated Michigan's Persons with Disabilities Civil Rights Act.

**COUNT V**
**VIOLATION OF MICHIGAN PERSONS WITH**
**DISABILITIES  CIVIL RIGHTS ACT RETALIATION**

161.    Plaintiff incorporates all preceding paragraphs.

162.    Plaintiff engaged in protected activity under Michigan law by requesting reasonable accommodation and opposing disability-related unfair treatment.

163.    Defendant knew Plaintiff engaged in protected activity.

164.    Defendant terminated Plaintiff one day after Plaintiff's written accommodation request.

165.    Defendant's termination of Plaintiff was materially adverse.

15

166.    Defendant's termination was causally connected to Plaintiff's protected activity.

167.    Defendant's stated reasons for termination were pretextual.

168.    Defendant retaliated against Plaintiff in violation of Michigan's Persons with

Disabilities Civil Rights Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant and award:

A. Back pay, including lost wages, salary, overtime, bonuses, raises, and other compensation;

B. Front pay in lieu of reinstatement;

C. Lost employment benefits, including retirement, health insurance, pension, apprenticeship-related benefits, seniority, and other fringe benefits;

D. Compensatory damages for emotional distress, humiliation, embarrassment, anxiety, mental anguish, loss of enjoyment of life, and other non-economic injuries;

E. Liquidated, exemplary, or enhanced damages to the extent permitted by applicable law;

F. Prejudgment and post-judgment interest;

G. Reasonable attorney fees, costs, and litigation expenses as permitted by law;

H. Tax-offset or tax-consequence relief as permitted by law;

I. Any other relief that the Court deems just and proper.

Respectfully Submitted,

*/s/   Robert Anthony Alvarez*          .
Robert Anthony Alvarez (P66954)
Victor M. Jimenez Jr.  (P85194)
Attorneys for Plaintiff
Avanti Law Group PLLC

16

## JURY DEMAND

NOW COMES Plaintiff, by and through his attorney, and hereby requests a trial by jury

pursuant to Rule 38 of the Federal Rules of Civil Procedure.


Respectfully Submitted,


*/s/   Robert Anthony Alvarez*          .
Robert Anthony Alvarez (P66954)
Victor M. Jimenez Jr.  (P85194)
Attorneys for Plaintiff
Avanti Law Group PLLC


17